Sharon SIMMONS, Administrator of
the Estate of Trina Elliott,
Deceased, Plaintiff,

v.

UNITED STATES of America, Haiba
Sonyika, M.D., Myrtle Kai, R.N.,
CFNP, and Southside Healthcare,
Inc., Defendants.

No. CIV.A.1:02–CV–1535–J.

United States District Court,
N.D. Georgia,
Atlanta Division.

June 29, 2004.

Deborah Arlene Alroth, Cirignani, Heller, Harman & Lynch LLP, Chicago, IL, Jason Phillip Wright, Holland & Knight, Atlanta, GA, Steven Richard Ashby, Ashby Family Law Associates, Tucker, GA, for Plaintiff.

Lisa D. Cooper, Patricia Rebecca Stout, Robert David Powell, Office of United States Attorney Northern District of Georgia, Cheryl Barnes Legare, Holland & Knight, James Mackiell Hunter, Holland & Knight, Atlanta, GA, for Defendants.

## ORDER

CARNES, District Judge.

This case is before the Court on plaintiff's Motion For Interlocutory Appeal [37]. Previously, this Court issued an Order [30] dismissing a group of defendants, referred to in the Order as the "Southside defendants." Although this Order was final as to these defendants, other defendants—the "federal defendants"—still remain in the action. Accordingly, the Order did not end the litigation and was not final: hence, plaintiff's present motion for an interlocutory appeal as to the dismissed defendants.

The parties agree that a district court may certify an interlocutory appeal, pursuant to 28 U.S.C. § 1292(b), only when the interlocutory order "involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." (Def.'s Resp. [38] at 4). The parties disagree as to whether this Court's interlocutory Order satisfies this standard. This Court agrees with plaintiff that it does.

The dispute that was before this Court was quite complex procedurally and also quite unique, as a factual matter. Full understanding of the complexity of the matter requires a complete reading of this

Court's complete Order, issued on March 31, 2004. The Court will, however, endeavor to summarize the issue. Plaintiff is the administrator of the estate of a deceased woman, Trina Elliot, who was twenty-nine years old when she died of cervical cancer. For convenience, however, the Court will also sometimes use the term "plaintiff" when referring to the deceased. Plaintiff's treatment began in June 1997 and ended with her death in April 2000. She sued the hospital and health care providers who had treated her during this period of time in the Fulton County Superior court of Georgia. The procedural issues before the Court, however, arose because, on November 3, 1997, the hospital was sold to the federal government. Thus, at all times after November 3, 1997, both the hospital and the health care providers—who were the same providers as before November 3rd—became, respectively, a federal institution and federal employees.

As a result, the United States removed the case to federal court and substituted itself for the hospital and these employees as the defendant in the case. Yet, the United States [hereinafter "the federal defendants"] substituted itself only as to any acts of malpractice occurring after November 3, 1997. Further, upon removal, the federal defendants moved to dismiss any post-November 3, 1997 claims in order that the plaintiff could proceed administratively to exhaust appropriate remedies under the Federal Torts Claims Act. The district court judge to whom the case was assigned, which was not this Court, granted the federal defendants' motion and dismissed without prejudice all claims relating to post-November 3, 1997 acts. As to pre-November 3, 1997 acts, however, the court remanded those claims back to the state court from whence they had come.[1]

Eventually, plaintiff did exhaust her remedies and refiled her case against the federal defendants. Upon refiling, this action was assigned to the undersigned. Plaintiff thereafter sought to rejoin the "claim" against the federal defendants with the "claim" remanded to the state court against the Southside defendants—who were, of course, the same people as the federal defendants, albeit they were now different entities, for legal purposes. Plaintiff made persuasive arguments as to why it would be difficult to litigate her action if that part of the action relating to the earlier acts of alleged malpractice were in state court, whereas the part of the action relating to the later acts of alleged malpractice were in federal court. Stated simply, the Southside defendants would presumably argue that malpractice occurred later in the treatment; the federal defendants would argue that any malpractice occurred as a result of a missed diagnosis early in the treatment. With both defendants pointing fingers at the other, it would be difficult for two different finders of fact, in two different courts, to put the puzzle pieces together in a fair manner.

As a result of the perceived difficulty of trying the case in two different pieces before two different courts, the plaintiff requested that this Court join the "state claim" with the federal action pending before it. See Pl.'s Motion. [7]. The Court reviewed the parties' pleadings, researched the matter, and conducted a conference with counsel. At this conference, the Court expressed sympathy for plaintiff's position, but indicated that controlling law suggested that the Court could not properly join a state action with a federal action. See February 14, 2003 Conference [15]. The Court invited counsel to confer to

---

1. Of course, use of the word "claims" is a bit inapt, as plaintiff did not subdivide a particular claim relating to multiple acts into two separate sub-claims, separated by the timing of the acts.

determine whether they could agree on a mechanism to allow plaintiff to dismiss the state claim and refile the entire action again in federal court. Further, the Court noted its understanding that the "federal claim" would be tried to the Court, whereas the plaintiff would have a right to a jury trial for the "state claim." Given the awkwardness of a partial verdict by a jury and a partial verdict by this Court, the Court indicated its unwillingness to proceed in a joint action unless the plaintiff and Southside defendants also agreed to try their action before the Court. The Southside defendants agreed to confer, but they did indicate that they believed they had a meritorious statute of limitations defense.

Eventually, the plaintiff did file an amended complaint in federal court before this Court, refiling the entire claim in one action. The Southside defendants did file their motion to dismiss, both on statute of limitations grounds, as discussed, and also on a statute of repose ground, which the Court does not believe to have been specifically mentioned before at the conference.

The Court ultimately issued an Order granting the Southside defendants' motion on statute of repose, but not statute of limitations, grounds. This Court noted that the reasoning requiring this result seemed hypertechnical to the Court and did not seem to serve the policy purposes behind the Georgia statute of repose or statute of limitations, as the Southside defendants had been on notice of the litigation since its original filing back in state court, before it had ever been removed to federal court. Nevertheless, the Court read this result as being required by Georgia case law. See generally Order of March 31, 2004[30].

Plaintiff now seeks to appeal the Court's ruling dismissing the Southside defen-

dants. The Court agrees with plaintiff that its interlocutory order involved a controlling question of law—the application of the statute of repose to the Southside defendants—for which there is a substantial ground for a difference of opinion. That is, the Georgia Supreme Court [2] might well conclude that the statute of repose should not apply under the unique facts at issue in this case, which facts have presumably not previously been before that court. Further, an appeal would materially advance the ultimate termination of the litigation. The practical difficulties of separating out pre-November 3, 1997 acts of malpractice—and their causative effects—from post-November 3, 1997 acts still remains. Further, if this Court issues a verdict for plaintiff against the federal defendants in the case still before it, and if plaintiff ultimately succeeds in her appeal of the dismissal of the Southside defendants, this Court will then have to try that first piece of the action against the previously dismissed Southside defendants. It will then have to figure out how to coordinate any earlier damages assessments against the federal defendants, if such have occurred, with any damage assessments that could potentially result from a second trial against the Southside defendants. Clearly, it would be a more efficient use of judicial resources to try this case only once. An interlocutory appeal would make that possible.

*Conclusion*

For the above reasons, the Court concludes that plaintiff has satisfied the standards necessary for this Court to certify an interlocutory appeal, and the Court does so certify this action. It is therefore HEREBY ORDERED that the Court **GRANTS** plaintiff's Motion For Interlocu-

---

**2.** The Eleventh Circuit would, of course, decide whether or not to certify the question to the Georgia Supreme Court.

tory Appeal [37–1]. The Court also **GRANTS** plaintiff's Motion for a Stay [37–1] until the Eleventh Circuit determines whether to accept-jurisdiction of this appeal. Plaintiff should advise the Court promptly of any decision by the appellate court.